[Cite as *State v. Martin*, 2011-Ohio-5634.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    25615 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTOINE RASHWAN MARTIN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 97 04 0793 (B) |

DECISION AND JOURNAL ENTRY

Dated: November 2, 2011

---

MOORE, Judge.

{¶1}    Appellant, Antoine Martin, appeals from his conviction in the Summit County Court of Common Pleas.  This Court affirms in part, vacates in part, and remands for proceedings consistent with this opinion.

I.

{¶2}    We considered this case in a previous appeal and summarized the facts as follows:

"On April 7, 1997, [Martin] and Anwar Shehadah, the victim, were in a confrontation outside the Wooster Market in Akron where Anwar worked. Anwar allegedly used a knife to keep [Martin] from attacking him. When the police arrived at the scene, [Martin] told the police that nothing was wrong and that he was just leaving. [Martin] claimed that Anwar cut him with the knife in the leg before the police arrived, but he also admitted that he did not share this information with the police. [Martin] walked across the street and yelled back to Anwar that if Anwar came into the projects, [Martin] would kill him.

"On April 13, 1997, Anwar worked at the Wooster Market until a little after one o'clock in the morning. Anwar's girlfriend was with Anwar at work and admitted that he drank some beer while working that evening. At the end of his shift, Anwar and his girlfriend left Wooster Market in a van and drove to Edgewood Homes because Anwar wanted to buy some drugs. When they arrived at

Edgewood Homes, Anwar's girlfriend stayed in the van. Anwar got out of the van and started looking for someone who would sell him some drugs.

"In the meantime, [Martin] and his friend, Aaron, had stopped by [Martin]'s cousin's apartment at Edgewood Homes to get some money before meeting two females at a nearby motel. While [Martin] and Aaron were at the apartment, Anwar knocked on the door. [Martin] opened the door, and Anwar indicated that he wanted to purchase some drugs. [Martin] and Aaron stepped into the hallway, and [Martin] sold some crack cocaine to Anwar. Anwar put the crack in his mouth, decided it was not real crack, and started yelling at [Martin] to give him his money back. Colin Kirkland, who lived in the complex and heard the yelling, emerged from his apartment wearing a t-shirt and boxer shorts, waved a gun, and screamed at them to leave. Kirkland testified that Anwar was holding a crack pipe, and Aaron stated that Anwar was holding a screwdriver. [Martin] testified that Anwar had a knife and came toward him with the knife. Aaron claimed that he never saw Anwar move toward or lunge at [Martin].

"According to [Martin], Aaron pushed Anwar out the door and down the stairs. Pursuant to Aaron's testimony, [Martin] grabbed Anwar and threw him down the stairs. Both [Martin] and Aaron asserted that Anwar landed on his back. [Martin] testified that Anwar was on the ground with a knife and was yelling threats about taking [Martin]'s life. [Martin] stated that when he walked over to Anwar, he was hit by Anwar in the eye. [Martin] then retrieved a branch from a nearby tree and proceeded to hit Anwar once in the head and twice in the chest with the tree branch. Witnesses testified that they observed [Martin] repeatedly beat Anwar in the head with a broomstick or a bat. [Martin] admitted that he did not see anyone else beat Anwar with any type of object. Anwar was eventually taken to a hospital, where he died from blows that he had sustained to his head.

" On April 17, 1997, a Summit County Grand Jury indicted [Martin] on one count of murder in violation of R.C. 2903.02, one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of involuntary manslaughter in violation of R.C. 2903.04(A). On August 13, 1997, [Martin] was found guilty of all three counts. The trial court sentenced [Martin] to an indefinite period of fifteen years to life for the murder count, ten years for the involuntary manslaughter count, and eight years for the felonious assault count. The trial court further ordered that all the sentences be served concurrently." *State v. Martin* (Feb. 9, 1999), 9th Dist. No. 18715.

**{¶3}** On appeal, this Court affirmed his convictions. On May 14, 2010, Martin filed a motion for resentencing because the trial court failed to properly notify him of postrelease control. The State requested that Martin be sentenced de novo pursuant to *State v. Singleton*, 124 Ohio St.3d 174, 2009-Ohio-6434, paragraph one of the syllabus. A hearing was held on August

31, 2010. On September 10, 2010, the trial court merged Martin's convictions for felonious assault and involuntary manslaughter into the conviction for murder and sentenced Martin to fifteen years to life. The judgment entry fails to mention postrelease control.

{¶4} Martin timely filed a notice of appeal. He raises one assignment of error for our review.

## II.

### ASSIGNMENT OF ERROR

"[MARTIN'S] CONVICTION MUST BE VACATED BECAUSE HIS RIGHT TO BE FREE FROM DOUBLE JEOPARDY HAS BEEN VIOLATED BY THE CONVICTIONS OF FELONIOUS ASSAULT, INVOLUNTARY MANSLAUGHTER AND FELONY MURDER BECAUSE SAID OFFENSES ARE ALLIED OFFENSES OF SIMILAR IMPORT."

{¶5} In his sole assignment of error, Martin contends that his conviction must be vacated because the convictions of felonious assault, involuntary manslaughter and felony murder are allied offenses of similar import and thus violate his double jeopardy rights.

{¶6} Before we address Martin's assignment of error, we must first determine the proper scope of the resentencing hearing. Martin filed a motion for resentencing because the trial court failed to properly notify him of postrelease control. The State requested a de novo resentencing hearing pursuant to *State v. Singleton*, which required the trial court to hold a de novo sentencing hearing to correct postrelease control in a sentence imposed before July 11, 2006. *Singleton*, 124 Ohio St.3d at paragraph one of the syllabus. At the de novo resentencing hearing, the trial court reviewed the issue of allied offenses, and merged Martin's convictions for felonious assault and involuntary manslaughter into the conviction for murder. The entry fails to mention postrelease control.

{¶7}     During the pendency of this appeal, the Ohio Supreme Court released its decision in *State v. Fischer*, which clarified that when a trial court does not properly impose postrelease control as part of a defendant's sentence, "that *part* of the sentence * * * is void and must be set aside," and that "only the offending portion of the sentence is subject to review and correction." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, at ¶26-27.  Thus, "[t]he scope of an appeal from a resentencing hearing in which mandatory postrelease control is imposed is limited to issues arising at the sentencing hearing."  The court further held that res judicata does not preclude review of a void sentence, but it "still applies to other aspects of the merits of a conviction, including the determination of guilt and the lawful elements of the ensuing sentence."  Id. at paragraph three of the syllabus.

{¶8}     In this case, as in *Fischer*, the only issues arising at the resentencing, and thus subject to review, were those encompassing the postrelease-control notification.  This is not a case involving a resentencing pursuant to a remand.  Accord *State v. Jones*, 9th Dist. No. 25676, 2011-Ohio-4934; *State v. Brown*, 2011-Ohio-1029, at ¶11 (concluding that the allied offense issues were properly before the trial court because the appellate court had previously mandated the merger of two convictions).  As such, issues relating to allied offenses were not properly before the trial court.

{¶9}     In his prior appeal, Martin argued that involuntary manslaughter and felonious assault were allied offenses of similar import.  See *Martin*, supra.  This Court determined that the alleged errors did not rise to the level of plain error and affirmed his convictions.  Id.  It is long-standing precedent in Ohio that res judicata bars the consideration of issues that were raised or could have been raised on direct appeal.  *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, at ¶16-17.  Because Martin has already "had the benefit of one direct appeal, [he can]not raise any

and all claims of error in a * * * successive appeal." See *Fischer* at ¶33, citing *State v. Fischer*, 181 Ohio App.3d 758, 2009-Ohio-1491. Pursuant to *Fischer*, the trial court's authority was limited to informing Martin about mandatory postrelease control. *Fischer* at paragraph two of the syllabus. It did not have the authority to merge the offenses and to resentence Martin. Because the trial court exceeded its authority by merging the offenses for sentencing, and it failed to properly impose postrelease control, we vacate the September 10, 2010 judgment entry. Martin's original concurrent sentences remain valid. The matter is remanded to the trial court for resentencing to correct the void portion of his August 13, 1997 judgment entry, that is, the postrelease control portion of his sentence, leaving the remainder of Martin's sentence intact.

{¶10} Based on the foregoing, we decline to address the merits of Martin's assignment of error, as it is barred by res judicata.

III.

{¶11} We decline to address Martin's assignment of error. Martin's original concurrent sentences remain intact, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
vacated in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

CARR, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

JANA DELOACH, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.